CHRISTIAN HOOVER *v.* GEORGE WELLS, Admr., &c.

1. HUSBAND AND WIFE: EXCHANGE OF SLAVES BY WIFE, A PURCHASE ON CONDITION THAT SHE CONVEY A GOOD TITLE.—If a feme covert exchange one of her slaves, held as a separate estate under the laws of this State, for another, the transaction is but a purchase, on her part, of the slave acquired by the exchange, upon the condition that she conveys title to the other; and if she fail to do so, no title vests in her to the slave so acquired; and the other party will be entitled to recover his property, whenever the transaction shall be disaffirmed by her, or her legal representatives.

2. SAME: DEFECTIVE CONVEYANCE OF HUSBAND AND WIFE BINDS THE HUSBAND.— The statute which prescribes the mode in which a feme covert shall convey her separate estate, is intended solely for the protection of her rights, and not for the preservation of the rights of the husband; and hence, where a conveyance of her slaves by the wife and her husband is defective, on account of a non-com-

pliance with the provisions of the statute, it will nevertheless conclude him as to any interest he may have in the property.

APPEAL from the Chancery Court of Pike county.   Hon. John E. McNair, chancellor.

The substance of the bill is stated in the opinion of the court.

*John T. Lambkin*, for the appellant.

*D. W. Hurst*, for the appellee.

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the Chancery Court of Pike county, sustaining a demurrer to the complainant's bill.

The case, as presented by the bill, is as follows: The defendant below, about the year 1841, intermarried with the daughter of the complainant.   Soon thereafter, the complainant gave to his daughter a female slave, and the daughter becoming dissatisfied with the slave, requested the father to take her back, and to give to the daughter another.   The father, yielding to this request, furnished his daughter with a sum of money, sufficient to purchase another slave, which the daughter had selected, and the purchase was accordingly made.   It is further alleged, that the defendant, having but a small force, the complainant permitted him to retain the possession of the slave first given, until possession should be demanded by the complainant.   That under this arrangement, the defendant retained possession until about the close of the year 1846, when he returned the slave, together with the children born during such possession, to the complainant.   The defendant's wife having died some time during the year 1846, he has qualified as the administrator of her estate, and in that character brought an action at law to recover from the complainant the slaves returned to him in 1846. The object of the bill is to enjoin the prosecution of this proceeding at law.

The proposition made by the daughter to the father, was to exchange the slave which he had given her, for another possessing different qualities; and this proposition was virtually accepted by the father, when he gave to the daughter the money to purchase

the slave which she had selected. It was in substance an agreement to exchange slaves; and if it be true that the daughter did not part with her title to the slave which she proposed to surrender to the father, it must also be true that she did not acquire the title to the slave last given, as her right to such title was made dependent upon the fact of her parting with the title to the other slave. A feme covert having the right to acquire property by purchase, may, in the exercise of this right, purchase upon condition; and if she purchase in this manner, she must perform the condition, before an absolute title to the property can vest in her. Under the case, therefore, as made by the bill, it would require but a slight amendment to the prayer for relief, to enable the complainant to recover the slave last given, if he should be held not entitled to relief as to the slaves claimed by the defendant.

But we do not regard this as the material point in the case. It is not averred, that there were any children born of the marriage of the defendant with the complainant's daughter; and if it be true that there are no children, the defendant, under the law, would take a fee simple estate in the slaves; but under any view, he takes a life estate; and having delivered the slaves after the death of his wife, he parted with all the right or title which he could assert thereto, either individually or as administrator, as the recovery would enure to his benefit, according to the estate which he would have in the property. The statute which prescribes the mode in which a feme covert shall convey her property, is intended alone for the protection of her rights, and has no reference to the rights of the husband in the property. The distinction between the two cases is manifest. The wife's power to convey her property is derived from the statute; and it is as to her something granted by the law. Not so, however, as to the husband. His power to contract and dispose of his rights in property exists to the extent that he is not restrained.

The defendant, then, under any view, having a life estate in the property, could contract as to this interest; and having surrendered his title, whatever it was, to the complainant, he, the defendant, cannot recover, supposing the allegations of the bill to be true. If the case depended alone upon this last point, the defence could be made at law. But as the merits of the case may be involved in the

first point decided, the decree will be reversed, and cause remanded.

Decree reversed, demurrer overruled, and cause remanded for an answer in sixty days.